May it please the Court, my name is Steve Keel. I represent the appellant in this case, Mr. Makdessi. I'm joined today by my colleague, Elliot Schulder. Mr. Makdessi was brutally raped and beaten in his cell by his cellmate at Wallensbridge State Prison on the morning of December 21, 2010. This was an attack that was so severe he required multiple sutures and spent 47 days in the prison infirmary. Let me ask you the posse of the facts in this case and how we ought to view those facts. There was a bench trial here and now it's on appeal to us and you're giving facts that, of course, are favorable to your client. Are those the facts upon which our review rests? Are we to look at the facts as found by the Court? I believe this is an appeal of the District Court opinion and the District Court adopted the facts of the magistrate. But I also want to point out, on clear error standard, this Court has found that it does not only look at whether there was overwhelming evidence from the facts that an error was made, but will also look to the processes of the fact-finding process. And this Court has said that if it is clear that whatever the actual facts may be, if the findings under review were induced by an erroneous view of the controlling legal standard, then clear error can be found. And here the magistrate judge repeatedly talked about in her report and recommendations So you're telling us the facts with an eye toward whether the legal standard was incorrectly applied. That's correct. Fair enough. It appears that the magistrate judge did not apply the full and correct legal standards here for deliberate indifference. She was looking to whether the evidence showed the defendants did know, she kept saying, of the risk of serious harm to Mr. McDessie, and she did not look at whether the evidence, the voluminous complaints and grievances that have been filed show that the defendants must have known. And because she did not apply that must-have-known legal standard, that is clear error, we believe on that point. And the Supreme Court in Farmer v. Brennan and this Court in Odom and a number of other cases have... Are there any facts, any facts that the magistrate judge was operating on and the district court in Odom was operating on, any facts themselves, to get the legal standard for it, any facts that you think were clearly erroneous? The magistrate judge used facts that were clearly erroneous in and of themselves. The conclusion that the defendants did not know of these complaints and grievances and the attack as it was going on was clearly erroneous because there is an overwhelming amount of evidence. But that also puts a legal standard of should-have-known. I'm just asking the facts themselves. Did she say the defendant was in a certain place or that somebody else was somewhere else or did see or didn't see that you think is clearly erroneous in the record of this case? It seems she had the full record of facts before her. We're just saying that she did not apply the correct standard to those facts and that when looking at those facts, in the year leading up to this attack, 20 grievances, complaints, more than 20 letters filed, 16 of them specifically mentioning sexual assault, saying I've been sexually assaulted numerous times at this prison. When there is a state policy that says any employee of a prison, if they have a reason to suspect sexual assault, should immediately report it to their supervisor. When you have the supervisors testifying that, yes, I would be made aware of this, that complaints are sent to me, that if there's a security issue, I am aware of it, then it shows that these defendants must have known that Mr. McDessie was at a serious— What's your strongest argument that these defendants must have known? What's your strongest factual argument that they must have known? Several of the complaints and grievances were copied to the defendants in this case. There was one in 2007 when Mr. McDessie first moved to Wallins Ridge State Prison where he said, I fear for my life. That was copied to Captain Gallagher, the defendant in this case. On December 9, 2010, just 12 days before this assault, Lieutenant Fields, the defendant here, was copied on a complaint in which Mr. McDessie said that, I will be intimidated into dropping this complaint, just like the other complaints. He was mentioning intimidation. Lieutenant Fields' name is on this complaint at JA-273. And then in February of 2010, there was a fight between Mr. McDessie's cellmate who attacked him, Michael Smith. This is before they were cellmates. Michael Smith went into the cell of another prisoner and attacked him so severely that the prisoner required three stitches. The prison report on this attack in February 2010 states that Captain Gallagher was notified of this and met with Michael Smith to discuss this attack on another prisoner. Is your argument that from the facts that were established as being known by these defendants, they should have known it was deliberate indifference? Or is your argument they should have known the facts somehow in the normal course of communications that from which they could then know there was a problem? Which is it? They should have known the facts or from the facts they should have known? It's the former. It's that they must have known that there was a risk here. That this is not just a few isolated cases. So in other words, you don't point to a fact that anybody specifically knew that would put that person in a position that person should have known, even if he didn't know directly, of the risk. But in the normal course of events, that person or those persons should have been informed of the facts. That's what you think. There's a lack of communication in this case? No, it's more than that. It is that one of the facts is this 2007 complaint copied to Captain Gallagher from Mr. McNessie, in which he says, I fear for my life. So that is a fact that shows that he must have known, not just that he should have known. We know that Captain Gallagher met with his cellmate prior to there being cellmates and was aware that this was a violent predator with a history of prison infractions who was about half the age of Mr. McNessie, who was a much higher security level rating. And they continued to leave in a cell together these two inmates. Mr. McNessie is 49 years old. He's 5'4". He has a history of back problems. He is placed into a cell and left in a cell, even after he has made a complaint. Wasn't there evidence that there was some sort of prison policy that you separated? You wouldn't put two people like that together in a cell. There's a prison policy that you're supposed to consider these kind of factors about their age. They rate them on a scale of 1 to 5. No 99s here. Mr. Smith was at the top of the scale. Mr. McNessie was lower on the scale and much older and has this history of saying that, you know, I have been sexually assaulted or physically assaulted by every cellmate I have had at this prison. He is trying every way he knows how to alert these prison officials to the fact that he is at real risk from his cellmates. It seems that what you are saying is that, taking the facts as they are, if you look across it in terms of policy there, the court should have determined as a matter of law that they must have known. That's correct. Well, I don't know that you – I didn't read your brief as going that far. Maybe that's one of your arguments. You sort of pose five or four theories you get from Farmer. And the one that was the obvious risk theory, it seemed to me that the Supreme Court did in fact, in Farmer, talk quite a bit about the obvious risk. And here – and so the fact that there could be an obvious risk basis for recovery isn't just sort of a passing reference. We talked about it at length. If you should demonstrate that, then it seemed to be – if you show circumstantial evidence of the obvious risk, then the prison official can come back and offer evidence why it was not an obvious risk. And I think that the posture you're in now is you're saying that the district court, magistrate judge, didn't recognize the obvious risk factor theory. But if they had, you wouldn't be necessarily – and even if they found there was an obvious risk, you wouldn't be entitled necessarily to judgment as a matter of law. Under Farmer, the prison officials could come back and rebut that. Correct? That's correct. They could, but we also – It's not a statement in what you stated earlier. Well, we also believe that – It's not a nice argument for you right there. If you didn't have that, you would have been lost in the woods. It's not – Well, I don't know about that. It's not just one person's word against another. It's not just Mr. McNesty's word against the word of these – of the prison officials who come back and say something different. I mean, there is the – there is this written record with this weight of evidence. And the magistrate judge even recognized during the hearing – she interrupted the state during their closing argument and said, you know, over and over he's filed requests that reference numerous sexual assault at Wallens Ridge. And she said, it just seems to me that there's no one at Wallens Ridge who either listened to this man or believed this man anything he said. But that's not inconsistent with deciding that these defendants didn't have that knowledge. That's just saying some – and it looks to me like somebody there certainly knew. But I thought she made a factual finding these defendants did not have knowledge of those prior complaints. Didn't she make that factual finding? She – I just – if you know or don't know. I believe she did. But we're saying that she made that she was not using the proper legal standard looking at the fact that the fact finder can infer that there was deliberate indifference from the fact that the risk was obvious. Which the Supreme Court said. Your position – I don't know if it's – your position is that she seemed to misread – to narrowly read the Supreme Court case. She – correct. She required it as reading that there had to be direct actual knowledge. And she did not consider a second method of proving knowledge. Well, won't you take – just so I understand. Just take 15 or 30 seconds if you could and state for me then exactly what your theory is. That the risk was obvious? That the prison had to know it? Based on the number of complaints filed, the clear language of the complaints stating sexual assault. Based on the state policy requiring that employees report suspected sexual assaults to their supervisors. And based on the testimony of the supervisors that, yes, they would be made aware of these complaints. Therefore, it is obvious. That undercuts – no, that undercuts the factual finding about who knew. That just undercuts the factual finding that she didn't – she just made a finding that they didn't know. But you think she should have – it wouldn't be a factual finding. It would just be a legal determination that the prison was aware? I mean, what is that theory? That based on the weight of the evidence, they must have known. They must have been aware that – These defendants. That the three – Captain Gallagher, Lieutenant Fields, and Sergeant King must have known. The other – there are three other defendants, officers, Bellamy, Boyd, and Hall, who were on duty that morning. Officer Boyd was in the control room, which was just 30 feet – 30 or 40 feet. Yeah, but she – I thought she found – didn't they testify nothing was different? Or they'd walked past his cell and he hadn't said anything to them and they served him lunch or something. I thought there was a factual basis. For those on the scene, she could just say, I disagree with your testimony and I accept their testimony. Well, with – For those on the scene. One of the – Officer Bellamy did walk by the cell around 10.56 in the morning, about an hour before Mr. McDessie's arrest. Well, Bellamy, Hall, and Boyd, she let out right away. I mean, the district court let her out right away, saying that there hadn't been a deal with respect to them. I know you didn't handle it then. So, it seems to me they're in sort of a different category. They didn't preserve the issue. They didn't take issue with the magistrate judge's findings. We believe that the objection – I know you believe they did, but you have a better case, shall we say, with respect to the other three. Absolutely. Would you agree with that? I agree with that. But we do believe that they did sufficiently object to the findings as to the three officers who were on duty. They talked about the testimony of all six defendants. They said each of these six did not uphold their sworn duty to protect the safety of Mr. McDessie. Officer Boyd was in the control room, which was just 30 feet away, which is probably the width of this courtroom, from Mr. McDessie's cell while he was being attacked and raped in a very serious attack. The pictures are in the joint appendix. And it just seems incredible that Officer Boyd and Sergeant King, who are both in the control room as this is going on, 30 feet from where it's happening, say they did not hear a thing. That's another instance where they must have known, where you have another inmate saying it was a loud fight. The officers would have heard this. And there have been cases in – See, I don't think you get – I speak only for myself – get anywhere disputing the facts. We're based on a system where trial courts decide facts, and we don't – unless you have a document that they've ignored. Really, you just don't get anywhere fighting the facts. So it seems to me you are reduced, and I thought that you were going there, that you were only relying on misapplication of the law. So even though Boyd, who is one of the three that is out because he didn't preserve his arguments anyway, was in the next room, it doesn't go anywhere with me because the magistrate judge knew that, found it a fact that he didn't hear. So there you go. What your case has to rest on was that all these reports and this policy made situations so that there was, in the words of Farmer, an obvious risk. And that it should have been put to the police officers, the prison officials, to rebut that. And they well may be able to. And the magistrate says that, in her report, McDessie contends that Officer Boyd should have heard or seen the assault. However, the evidence does not show that Boyd did hear or see the assault, as is necessary to make a showing of deliberate – It's actual knowledge, as opposed to being able to infer it. On that point of law, we believe there is a clear error. I think we understand your argument. We hear from the government. Thank you. Good morning. Good morning. May it please the Court. Trevor Cox for Lieutenant Fields and the other prison official defendants. The differential standard of review here makes this a pretty easy case. McDessie cannot show that any of the lower court's findings were clearly erroneous. McDessie, like any inmate, had a heavy burden to carry in trying to demonstrate – What about the posture that Judge Marsh questions and sort of put this case in on defense counsel? Right, if we look at the facts, we come to one inescapable conclusion. But do we go back and look to see if the court applied the right standard? And if the standard that the court applied was they had to have actual knowledge, as opposed to an obvious risk, it would then put the burden on the other side to show that it was not, that perhaps this could have been turned out differently, which would lead to the conclusion that if they didn't do the right standard, then they need to go back and do it the right way, unless you can show something that even if you did the right standard, it wouldn't be any different. Yes, Your Honor. I believe that the factual determinations that were made, the credibility determinations that were made by the magistrate after hearing testimony for two days and receiving 100 exhibits and examining a dozen witnesses and viewing video footage – The question is, does the right standard apply? Even if you believe that, but that's only if you accept that she applied the right standard. Did she apply the right standard? Yes, she did, Your Honor. What is the defendant? Well, the Farmer case holds that defendants cannot be found liable for an 8th Amendment violation unless they consciously disregard a substantial risk of harm. And the Farmer case did go on to say that actual knowledge is not necessarily necessary, that if there are long-standing persistent problems that are so obvious that the defendant must have known of them, then perhaps there may be an 8th Amendment violation. That's not the case here. Did the defendant apply an actual standard, actual knowledge standard? The magistrate judge certainly found that defendants did not have any actual knowledge, and they also didn't find that they should have known. Did she find that there was no obvious risk? I believe – Or no long-standing policy? I believe you can fairly read that in the report and recommendation, Your Honor. Do you know where it might be? If you give me a moment, I'll find it here. Did you think about this theory before you came in here? I did, Your Honor, and frankly – So if you did, then you would have known exactly where you would rebut questions from the magistrate report, wouldn't you? Yes, the magistrate report is at J.A. 970s and thereabouts. But, Your Honor, the evidence was so – No, but that's not what I asked you. I said if the magistrate judge did address obvious risk, you said you thought about that before you came in here, I'm asking why wouldn't you know chapter and verse on what she said and where she said, I think, she, or the judge said it. Do you know that or you don't know that answer? I thought I did, Your Honor, in that it was part of the findings that the court made in its report and recommendation. What happens if it's not there? I believe that the factual determinations that the magistrate judge did make, the credibility determinations she did make, are sufficient to – Tell us how so. Well, there's frankly just no evidence that defendants actually – Let me make sure I understand what you're getting ready to ask. You believe they are sufficient to show that they would support a standard of obvious risk? Yes, that they cannot be – Even though it's not there, it nonetheless would show what you're saying. That is correct. Even if it's not there. That's correct. Even if – It would defeat the obvious risk theory. Yes, Your Honor. Even if the magistrate judge didn't explicitly say that – What are they? Well, there's frankly just no evidence that the defendants knew that there was a substantial risk of harm to Mr. McDessie. The opposing counsel makes much of the grievances that Mr. McDessie filed over the course of his time at the Wallins Ridge State Prison. But these are all very generalized allegations, for the most part, about sexual assaults that occurred in the past, years in the past. And the alleged grievances were actually requests that mental health help him with the PTSD that he alleged that he suffered as a result of these past sexual assaults. So, for instance, the JA-254 is a report of a visit that he had with a mental health professional. And he said that there was three incidents of sexual assault at Wallins Ridge, all in 2007, and they didn't involve rape. And these are directed – these alleged grievances are directed to the warden, to the FBI, the ACLU, Amnesty International, everyone but these specific defendants. Is there any dispute that he was assaulted, that he was beaten, that he ran out of his cell and there was a – an inmate was beating him? No, Your Honor, that's not disputed, that there wasn't a physical altercation. The district court accepted the magistrate's report and finding that an altercation did take place on that day. Altercation with his cellmate and other gang members who were stabbing him and beating him at the time? I mean, he says he was raped during that time. Yes, he says that he was raped. There was no allegation of stabbing in that incident. And there was a physical altercation that spilled out from his cell. He walked out of the cell around – shortly before noon. I can't figure out, but it seems as though he then was taken either to medical or somewhere he was examined, and I guess a rape kit or whatever was done. They found blood in his anorectal area on the back, but it could have been from stomach problems or cramps? Yes, Your Honor. They did do a PERC test, and they found a little bit of blood in his rectum, but the testimony was from doctors that it could have been. Was it – I thought it was just there on a – I don't know if it was on his clothes or where it was. There's no dispute that there was blood in this altercation. He was bloody over his eyes, and there was some blood on the back of his underwear. There was no blood in his genital region, but there were a few spots of blood found in the anorectal sample. But there's no dispute that an altercation took place. It spilled out from the cell. Mr. Smith, his cellmate, followed him and started draining – There's no argument, is there, that the prison officials were indifferent once he ran out of his cell? Because didn't they immediately get there as soon as they could, fired a shot over the head of the perpetrator? So there's no claim about deliberate indifference, at least from the time he ran screaming out of his cell. He doesn't make that claim, does he? That's right. That's right. I believe they've conceded that defendants acted appropriately, and certainly the magistrate judge found that they acted more than appropriately in light of the risk as it became known to them. What's at issue is what happened before then. Let me just stop and ask. Your answer is, to the obvious risk theory, is that there is no evidence that maybe somebody knew of an obvious risk. You even doubt that. But if somebody did know about an obvious risk, it was not these defendants. That's because they did not have information about those earlier problems. That's correct. Excuse me. Can you turn to JA 974 for a moment? This is the end of the magistrate judge's report, close to the end, just before she makes her proposed findings and finds new liability. Although it does not change the ultimate recommended disposition of this case, it's worth stating that the evidence admitted at trial undoubtedly shows that McGessy filed numerous grievances and complaints to various departments, and he wrote letters to the assistant warden and the director of VDOC alleging that he'd been sexually assaulted on multiple occasions while incarcerated. For instance, he complained, blah, blah, blah. One of these complaints he directed, and it's also qualified medical, responded. Also, it appears the standard protocol of separating inmates alleging sexual assault was not followed when he filed his offender request for information in 2010. I just think in light of that, it's almost as if the magistrate judge doesn't know that an obvious risk can, does not necessarily, but can state a claim. Well, Your Honor, I think that this sort of caveat, if you will, or this last sort of paragraph… Were you at the hearing? No, no, Your Honor. When you read the transcript at the hearing, it appears the magistrate judge is – I think you're somewhat surprised with the conclusion that she comes to hear. She seems more sympathetic with it. Your Honor, it's clear that she believes that more should have been done in handling the grievances from Mr. McGessy. But it's not clear – well, I guess I will say it is clear that it doesn't change the ultimate disposition because these defendants didn't actually know anything. These grievances were directed towards mental health professionals. In fact, she says he had not been able to receive mental health treatment. And then she quotes mental health professional Clark for saying, hopefully, you will be well soon, instead of providing the treatment that the magistrate judge believes that he needs. With reference to the offender request for information October 28 stating they had been sexually assaulted by a cellmate, that – I believe it's at JA 971 and 972. Excuse me, JA 271, 272. And this is a document that's in dispute.  One of them, which clearly appears to have been doctored after the fact, indicates after saying I have not been eating and I lost weight because of a few reasons. Then he adds sexually assaulted by my current cellmate, whereas the original version on 271 doesn't have that language. Well, if there is a dispute, it seems to be that she's resolving it. I mean we're letting her resolve every other factual dispute. Your Honor, that did not – Is it your answer that those comments the magistrate judge made there, what you call the caveat or the end, is that she's concerned that something happened. She's just made it clear, though, you can't pin it on these defendants? That's certainly a reading that you could fairly take. What other reading do you take? That mental health treatment should have been provided to him, and he wasn't getting the treatment that he made need. I don't see where exactly you get that. Well, for instance, he allegedly suffered from post-traumatic stress disorder, and then the qualified mental health professional, Clark, responded, hopefully you will be well soon. Yes, but that's a quote from what the mental health provider didn't give him any treatment, but said hopefully you will be well soon. That's right. That's a quote from it. That's right. That's not the magistrate judge saying that there should be mental health treatment. Right. No, but I think that's the point, is that that's what the magistrate judge was concerned about, that more should have been done for him. There was no evidence to suggest that these grievances were seen by these defendants. They didn't have knowledge of it. Who set the policies for what happened with the grievances? I'm sorry, Your Honor? Who set the policies? What are the policies if a prisoner files grievances? What happens with them? Well, there are different kinds of forms that you can file, Your Honor, and I will admit my understanding of this is somewhat approximate. I'm asking because if a prisoner files grievances, and the answer at the end of a bunch of grievances, and this prisoner filed a number of grievances, is the defense then, we didn't know because we didn't look at it, or we didn't know because our policy didn't allow us to look at it in a way, the particular defense. Is that the answer? There is, Your Honor, a policy that's compliant with the PREA Act of 2003. When there are specific allegations of sexual assault that are actionable, action is taken. These don't fall into that category. These are not specific allegations of sexual assault. These are pleas for help for PTSD for sexual assault that he alleges to have occurred three years ago. No substantiation. So, it's not clear what action would be necessary. I will say that there's, in addition to… Even with all of the grievances, the individual that he was put in that cell with, the one that we described as meeting where they did everything they could once they found out, so to speak. But the person they put him in there with was, I guess he was a known gang member, and I don't know if what he said was true or not, but that person had a bunch of things against him of all kinds of infractions he had in prison that would lead to a person who's very violent, very motivated to do sexual type acts against someone, and he's much bigger than he was. And yet he's locked in this cell with him. And that's the same person that ultimately is seen when the door finally opens, chases him out and beats him until someone comes up and stops him from getting beat on. And all this is in the context of these grievances that have been filed that you say did not rise to the level of doing anything other than saying, here's somebody with a problem. That's correct, Your Honor. What is correct? That there was a physical altercation, that the cellmate did follow him out, but that was the first evidence of any risk. That's not really what I'm going at. I'm really getting at the business he's put in there with this guy, but he has this series of grievances that are there, and maybe one grievance is something you can kind of kick aside. But if a person keeps putting in grievances, and, I mean, isn't there, I mean, we're dealing with obvious risks here as opposed to if we take the posture that there's much risk on the pendants that the magistrate may have thought that an obvious risk wasn't enough, you needed to have actual knowledge. But these weren't grievances against this cellmate. These were grievances related to alleged sexual assaults that had occurred years ago. And, in fact, the district court in adopting the magistrate judge's report made no finding that a sexual assault had occurred. So what we're left with is – I'm sorry. I thought everybody agreed that there was a sexual assault here. The investigation that VDOC conducted said there was no sexual assault. Okay. I amend that. Everybody agreed that there was a beating that lasted several hours. Correct. Okay. I'm sorry. A beating that – Lasted some hours. I think there's a dispute about that as well, Your Honor. The state says it only could be 45 minutes or so. No, I think what the evidence showed was that as soon as there was a known risk, which was known when he left the cell and his cellmate started punching him – I think he's already been punched and battered and bloodied and had some internal injuries as well by that time. So something had to have preceded that, right? Yes, but we – And the evidence is undisputed that they were alone together for, I thought, about three hours. That's correct. But, for instance, the opposing counsel mentioned that – Is it your argument that – I thought it was the state's argument that he was beaten and bruised, but you thought it was basically some short period before he ran because don't you have testimony about some defendants going by the cell and talking to him? That's right. During the time period in which there's an asserted long beating going on, but they say that he didn't say anything. He looked fine. So I think if the state doesn't dispute there was an altercation, you just don't think, and you think the magistrate judge supported you, that it wasn't ongoing, it wasn't a two- or three-hour ordeal that morning. That's correct. I mean, the opposing counsel mentioned this, that Officer Bellamy walked by at 10.56 a.m., looked in, saw nothing out of the ordinary, no blood, nothing. And this was on video footage that was viewed by the magistrate judge. The concept of this is that he's in prison and there are gangs there, and if you run your mouth, you've got a problem. And so some of this, at least from his perspective, is that he's being called a snitch, and every time that comes up there's retaliation, and there are people in that prison system that do not take kindly to you saying to someone, an officer who walks by, hey, this guy, he has been beat me, or he's raped me, or that sort of thing, when you know he's a gang member. And then you also have, at least from their perspective, and I know this is not a light most favorable, but I'm just, you know, in terms of an obvious risk is where I'm going. You also know that if he says these things, that the officers are likely to do nothing, and if you do nothing, you are left in that prison with a bunch of gang people who are going to get you back for what you've done. So there's this, I mean, it's not like he's just out in the general public, and he's being beat up in an apartment or something. He yells when an officer walks by. He is in prison, and he is with gang members, and we know this. I mean, that part about it I think is pretty much obvious from the record. There are a few things that he could have done if he were really in danger. He could have asked for assignment to death row where he'd be in cell by cell. I'm not going to comment on that. He probably would like it under these circumstances. I won't comment on that either. What I will say is that there's policy that if he thought he was in danger, he could report to anyone there and say, I am fearful for my life. He says he did that. I know that they say he didn't, but he says he did. I mean, I've never seen a record with so many complaints. He filed them with somebody. I mean, then he didn't file them according to the state with the right person, so it was sent back. He said a great number of things. Well, he said them in writing in a timely fashion. He did, but none of those allegations were substantiated, and the magistrate judge declined to give them credibility, as she was entitled to do. So because of those credibility determinations and the standard of review here, this court should affirm. Thank you. Thank you very much. Thank you. Your Honors, I just would like to point out that the magistrate judge did apparently give credibility to the grievances and complaints based on her comments in her court recommendations that numerous grievances were filed and that nobody listened to him, and that we would request this case be remanded for determination under the proper legal standard that the defendants here must have known because the risk was obvious that could be inferred from the evidence here. Thank you, Mr. Connelly.  Mr. Connelly, I understand that you all are court appointed, and we very much appreciate your efforts for your clients. You did a fine job. We will come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, Dennis W. Shedd, James A. Wynn, Jr.